IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN D. BROWN, # B-34351, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-cv-659-JPG |
| | ) |
| ILLINOIS DEPARTMENT of | ) |
| CORRECTIONS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Vandalia Correctional Center ("Vandalia"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving a seven-year sentence for burglary. He raises several claims stemming from a nurse's alleged denial of medical care, which led to acts of retaliation after Plaintiff filed a grievance against the nurse.

According to the complaint, Plaintiff sought emergency treatment on January 31, 2012, from Defendant Nurse Paula Gephart, for a painfully swollen ankle (Doc. 1, p. 7). Defendant Paula Gephart refused to give Plaintiff pain pills until he signed a payment voucher. Plaintiff protested that he was exempt from making any co-payment for emergency medical care, but in the end, he signed the voucher and was given the medication. The medicine relieved Plaintiff's pain, but he filed a grievance against Defendant Paula Gephart over the incident, which was initially reviewed by Defendant Magnus (health care administrator). It was later rejected by Defendants Harter (counselor) and Dozier (warden).

On March 15, 2012, funds were improperly taken from Plaintiff's trust account (Doc. 1, p. 19). Although Plaintiff does not explain this fully, it appears that he is referring to the co-

payment for his medical visit. Plaintiff also complains that other co-payments were collected for emergency health and dental care (Doc. 1, p. 23). His grievances over this issue were rejected as well, and the disposition of the grievances was approved by Defendant Godinez (IDOC Director) (Doc. 1, p. 21).

During the night of March 30, 2012, after Plaintiff got an unsatisfactory response to his grievance, he was awakened and harassed by Defendant Ethan Gephart (Doc. 1, pp. 8-9). Ethan Gephart is a correctional officer, and the husband of Defendant Paula Gephart. Defendant Ethan Gephart seized some of Plaintiff's property, and directed another officer to write Plaintiff a disciplinary ticket. These actions were taken in retaliation for Plaintiff having pursued a grievance against Nurse Gephart. Plaintiff also asserts that he was treated more harshly during this shakedown because of his race (African-American). His white cellmate was also awakened, but, unlike Plaintiff, was given a chance to put away his property and was not issued a ticket (Doc. 1, p. 9). Plaintiff filed a grievance over this incident, which was rejected by Defendants Waltz, Harter, and Dozier.

Plaintiff was called to a hearing on April 4, 2012, on the disciplinary report made at the behest of Defendant Ethan Gephart (Doc. 1, p. 11). Plaintiff had not been given a copy of the charges prior to this hearing, nor did he have the opportunity to prepare a defense or call any witnesses. Defendant Wells proceeded with the hearing anyway, and recommended disciplinary action against Plaintiff (he does not specify what punishment he received). Plaintiff's grievance over the conduct of the hearing was rejected.

On September 8, 2012, Defendant Ethan Gephart again woke Plaintiff in the middle of the night, took and destroyed Plaintiff's coffee mug, and ordered another officer to issue Plaintiff a disciplinary ticket. This ticket was unjustified, because it had to do with a laundry bag which

did not even belong to Plaintiff (Doc. 1, p. 12). Plaintiff contends that these actions were in retaliation for Plaintiff's grievances against Defendant Ethan Gephart and his wife. As before, Plaintiff's grievance was rejected.

On October 10, 2012, all of Plaintiff's personal property was seized and confiscated by Defendants Wilkinson and Brown, after they falsely stated it was contraband (Doc. 1, p. 13). The property was later destroyed, lost, or stolen. Plaintiff filed grievances, but was unable to get any compensation for his loss (Doc. 1, p. 15).

Defendant Ethan Gephart again woke Plaintiff during the night on January 10, 2013, to verbally harass him, implying that he had something to do with the above-described missing property. Plaintiff contends this action was a continuation of the retaliation for his prior grievances.

Plaintiff received another disciplinary report on January 14, 2013, while he was in segregation. He complains that the adjustment committee, made up of Defendants Teverbaugh and Osborne, refused his request for an extension of time to prepare a defense and to call witnesses (Doc. 1, p. 16). Plaintiff does not explain the nature of this disciplinary charge or the punishment he received. His grievance over this episode was also denied. He describes a similar occurrence after receiving another disciplinary report on March 26, 2013; again Defendants Teverbaugh and Osborne denied his requests for more time, staff assistance, and witnesses (Doc. 1, p. 22).

Finally, Plaintiff claims that unnamed mailroom staff deliberately interfered with his outgoing mail, consisting of grievances, in an attempt to deny him access to the courts, and in retaliation for his acts of writing grievances (Doc. 1, p. 24).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated a colorable federal cause of action against Defendant Ethan Gephart for retaliation **(Count 1)**, and for racial discrimination/denial of equal protection **(Count 2)**. In addition, the complaint states a retaliation claim **(Count 3)** against the unknown mailroom staff. However, Count 3 shall be severed into a separate lawsuit.

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George,* 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)). Plaintiff's complaint contains unrelated claims against different defendants: retaliation and equal protection claims against Ethan Gephart, and a separate retaliation claim against the unknown mailroom staff.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever Count 3 of Plaintiff's complaint, and shall open a new case with a newly-assigned case number for that claim. However, Plaintiff shall have an opportunity to voluntarily dismiss the newly severed case if he does not wish to proceed on that claim or incur the additional filing fee.

Plaintiff's remaining allegations fail to state a constitutional claim upon which relief may be granted, and shall be dismissed as explained below.

**Dismissal of Count 4 – Co-Payment for Medical Care**

Although Plaintiff characterizes this claim as a "denial" of pain treatment by Defendant Paula Gephart, he admits that he received the pain medication and obtained relief once he signed the payment voucher. As such, his only remaining complaint is that he was wrongfully required to pay for emergency care when it should have been provided free of charge. While Plaintiff may be correct, this problem does not rise to the level of a constitutional violation. An inmate's constitutional rights are not violated by the collection of a fee for prison medical or dental services. Whether or not a statutory exemption (such as for emergency care) should apply to the co-payment rule is a question of state law, not cognizable in a § 1983 action. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution"). Therefore, should Plaintiff wish to pursue this matter further, he must do so in state court. This civil rights claim shall be dismissed with prejudice.

**Dismissal of Count 5 – False Disciplinary Charges**

While Plaintiff may proceed on his retaliation and equal protection claims against Defendant Ethan Gephart, he does not state a separate constitutional claim based on the allegedly false disciplinary charges.

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the

discipline imposed). The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan,* 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

In the instant complaint, Plaintiff states that he was falsely accused of two conduct violations as a result of his run-ins with Defendant Ethan Gephart. Defendant Wells conducted the hearing on the first charge; it is not clear who presided over the second. Later, Plaintiff faced two other disciplinary hearings presided over by Defendants Teverbaugh and Osborne. Plaintiff gives no further information about the nature of the charges, but he points to flaws in each case where he was not afforded all of the procedural protections described in *Wolff*.

If Plaintiff had been given a properly conducted hearing, yet was found guilty of a false charge, he would not have a constitutional claim so long as the decision of the disciplinary hearing board was supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). On the other hand, even accepting Plaintiff's allegations that he was denied some of the procedural protections in *Wolff*, he still may not have an actionable claim.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A liberty interest *may* arise only if the disciplinary punishment included a period of segregation. An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*,

"the key comparison is between disciplinary segregation and non-disciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). The Seventh Circuit has recently elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original).

The instant complaint falls short of stating a claim for deprivation of any liberty interest as a result of the disciplinary actions against Plaintiff. He mentions being placed in segregation, but he never states whether this placement was the result of a guilty finding on any of the charges, or whether he was in segregation for investigative or administrative reasons. If he was put in segregation as punishment, he does not reveal how long he was there or whether the conditions were any more onerous than they were in general population. As such, the complaint does not include sufficient factual allegations to indicate that Plaintiff's constitutional rights were violated by any of the problematic disciplinary actions. Count 5, against Defendants Gephart, Wells, Teverbaugh, and Osborne, shall therefore be dismissed without prejudice.

**Dismissal of Count 6 – Destruction of Personal Property**

Apart from Counts 1 and 2 against Defendant Ethan Gephart, Plaintiff has no constitutional claim for the deprivation/destruction of his property. This applies both to the property items lost as a result of Defendant Ethan Gephart's actions, and to the later incident in which all of Plaintiff's property was taken by Defendants Wilkinson and Brown.[1]

---

[1] Plaintiff never asserts that Defendant Wilkinson or Brown had any retaliatory motive when they took his property on October 10, 2012. He states that they acted improperly, deliberately mishandled his belongings, and were recklessly negligent in allowing or causing the property to be disposed of (Doc. 1, pp. 13-14).

The only constitutional right that might be implicated by the taking of Plaintiff's personal property items is Plaintiff's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law. To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995).

Because Plaintiff may avail himself of a state court action to seek compensation for his loss, he cannot maintain a constitutional claim. The civil rights claim in Count 6 shall therefore be dismissed with prejudice.

**Dismissal of Count 7 – Denial of Grievances**

Plaintiff complains at length about the failure of Defendants Harter, Magnus, Dozier, Waltz, and Godinez to redress his grievances over the medical co-payments, retaliation, destruction/loss of property, improper disciplinary charges, and failure to follow hearing procedures on those charges. However, the rejection or improper handling of inmate grievance complaints will not give rise to a constitutional claim.

Plaintiff's efforts to exhaust his administrative remedies by using the prison grievance process may be relevant in the event that a Defendant raises a challenge to Plaintiff's right to maintain a § 1983 suit over the substantive matters raised in the grievances. Nonetheless, a Defendant's action or inaction in handling Plaintiff's grievances does not support an independent

constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

Notably, Plaintiff does not allege that any of the Defendants (Harter, Magnus, Dozier, Waltz, and Godinez) who either gave an unsatisfactory response to his grievances or failed to properly handle them were involved personally in any of the misconduct that gave rise to those grievances. The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli*, 81 F.3d at 1430. Plaintiff states only that these Defendants failed to sustain or properly respond to his grievances – grievances that he filed to complain about the misconduct of others.

Further, a Defendant cannot be held liable for the unconstitutional actions committed by a subordinate employee, merely on the basis of that supervisory role (for example, Defendant Waltz was allegedly the supervisor of Defendant Ethan Gephart, Doc. 1, p. 10). In a civil rights action, the doctrine of *respondeat superior* does not apply. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). In order to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Id.* (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

For these reasons, Count 7 against Defendants Harter, Magnus, Dozier, Waltz, and Godinez shall be dismissed with prejudice.

**Dismissal of Count 8 – Access to Courts**

As noted above, Plaintiff may pursue a retaliation claim (Count 3) against the mailroom staff who interfered with his attempts to mail out his grievances for administrative review (providing that he is able to identify those individuals by name). However, his allegations do not support a separate constitutional claim for denial of access to the courts.

Prisoners have a fundamental right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). Violations of that right may be vindicated in federal court, *e.g.*, in a civil rights action pursuant to 42 U.S.C. § 1983. However, an inmate has no constitutional claim unless he can demonstrate that a non-frivolous legal claim has been frustrated or impeded. *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996).

In the instant case, Plaintiff succeeded in filing his complaint with this Court, and his pleading does not describe any actual or potential limitation on his access to the courts. Actual or threatened detriment is an essential element of a § 1983 action for denial of access to the courts. *Howland v. Kilquist*, 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman v. Sprandlin*, 812 F.2d 1019, 1021-22 (7th Cir. 1987). Even a delay caused by prison staff is not necessarily a detriment that would support a constitutional claim. *See Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993). Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Kincaid,* 969 F.2d at 603. Plaintiff's allegations make no such showing. Accordingly, Count 8 shall be dismissed with prejudice.

**Dismissal of Defendants Illinois Department of Corrections and Vandalia Correctional Center**

Contrary to Plaintiff's allegations, neither the Illinois Department of Corrections ("IDOC") nor Vandalia Correctional Center is a "municipal corporation." The IDOC is a

government agency of the State of Illinois, and Vandalia is a division of the IDOC.

The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same).

As a state government agency, the IDOC is not considered a "person" within the meaning of the Civil Rights Act. *See Will*, 491 U.S. at 71. Neither the IDOC nor the Vandalia Correctional Center can be subject to a § 1983 suit for damages. For these reasons, Defendants Illinois Department of Corrections and Vandalia Correctional Center shall be dismissed from this action with prejudice.

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Frazier for further consideration.

**Disposition**

**COUNT 5** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNTS 4, 6, 7, and 8** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Defendants **WELLS, TEVERBAUGH, OSBORNE, WILKINSON,** and **BROWN** are **DISMISSED** from this action without prejudice. Defendants **ILLINOIS DEPARTMENT OF CORRECTIONS, VANDALIA CORRECTIONAL CENTER, GODINEZ, DOZIER, WALTZ, PAULA GEPHART,**

MAGNUS, and HARTER are DISMISSED from this action with prejudice.

IT IS HEREBY ORDERED that Plaintiff's retaliation claim against the unknown mailroom staff (COUNT 3), which is unrelated to the claims in Counts 1 and 2, is SEVERED into a new case. That new case shall be: Retaliation claim against UNKNOWN VANDALIA MAILROOM STAFF DEFENDANTS.

The new case SHALL BE ASSIGNED to the undersigned District Judge for further proceedings. In the new case, the Clerk is DIRECTED to file the following documents:

(1) This Memorandum and Order
(2) The Original Complaint (Doc. 1)
(3) Plaintiff's motion to proceed *in forma pauperis* (Doc. 4)

Plaintiff is ADVISED that if, for any reason, he does not wish to proceed with the newly-opened case, he must notify the Court in writing within 35 days (on or before **September 9, 2013**). Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened action, he **will be responsible for an additional $350.00 filing fee** in the new case. No service shall be ordered in the severed case until after the deadline for Plaintiff's response. Further, that case cannot proceed until Plaintiff identifies the defendant mailroom staff by name in an amended complaint, which he must file in that new case if he decides to pursue that claim. The Clerk shall notify Plaintiff of the case number for the new severed case as soon as it is opened.

In order to assist Plaintiff in preparing an amended complaint in the severed case, the Clerk is DIRECTED to mail Plaintiff a blank civil rights complaint form. Plaintiff is ADVISED that should he choose to proceed on the severed retaliation claim against the mailroom staff, his amended complaint in that case shall contain ONLY the claims designated in this Order as Count 3, and shall name ONLY those Defendants directly and personally responsible for those allegedly unconstitutional acts of retaliation. An amended complaint

supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, an amended complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with his amended complaint in the severed case.

**IT IS FURTHER ORDERED** that the <u>***only claims remaining in this action are COUNT 1 and COUNT 2 against Defendant Ethan Gephart***</u>, for retaliation and denial of equal protection. This case shall now be captioned as: **JOHN D. BROWN, Plaintiff, vs. ETHAN GEPHART, Defendant.**

As to **COUNTS 1 and 2**, which remain in the instant case, the Clerk of Court shall prepare for Defendant **ETHAN GEPHART** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 5, 2013**

s/ J. PHIL GILBERT  
United States District Judge